# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Plassein International Corporation, *et. al.*, | ) | Case No. 03-11489 (KG) |
| (n/k/a PL Liquidation Corp.), | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| _____ | ) | |
| WILLIAM BRANDT, as he is the | ) | |
| Trustee of the Estates of | ) | |
| Plassein International Corp., *et al.*, | ) | |
| | ) | Adversary Proceeding Number |
| Plaintiff, | ) | |
| | ) | A 05-50692 (KG) |
| v. | ) | |
| | ) | |
| B.A. Capital Company LP, *et al.*, | ) | Related Document Nos: 22, 23, |
| | ) | 25, 26, 27, 28, 29, 30, 31, 37, 43, |
| Defendants. | ) | 44, 45, 46, 47 |
| _____ | ) | |

# OPINION [1]

## INTRODUCTION

In January and August, 2000, Plassein International Corporation ("Plassein" or "Debtors") acquired five privately held corporations by purchasing the shares of the companies' respective shareholders. The Chapter 7 trustee, William Brandt ("the Trustee") has brought suit against the selling shareholders who are named defendants ("the Shareholders" or "Defendants") (see pp. 4-5 *infra*) seeking to avoid the transfers made to the

---

[1] This Opinion constitutes the findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Shareholders, claiming they were fraudulent conveyances pursuant to 11 U.S.C. § 544 and applicable Delaware law.

Before the Court are Motions to Dismiss the Complaint ("the Motions") filed by the Shareholders pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7012(b). The Motions are based upon the same grounds and, therefore, for efficiency and because the Motions are essentially identical, the Court will deal with the Motions together. First, Defendants argue that the Trustee alleges in the Complaint that a non-debtor made the transfers and the applicable statute requires that a debtor make the transfers for a cause of action to exist. Secondly, Defendants argue that because the payments they received were payments on account of a securities transaction made by wire transfers from a financial institution, the transfers were "settlement payments" and thereby exempt from avoidance pursuant to 11 U.S.C. § 546(e).

## JURISDICTION

The Court's jurisdiction rests upon 28 U.S.C. §§ 157 and 1334. The adversary proceeding is a core matter under 28 U.S.C. § 157(b)(2); and venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTS

Debtor Plassein International Corporation[2] was formed in 1999 to acquire several

---

[2] References to Plassein in the transactions at issue are for convenience. In the Complaint, debtors refer to Plassein as the acquiror. In fact, the closing documents show clearly that it was

privately held manufacturers of flexible packaging and specialty film ("the Target Companies"). (Complaint ¶ 27) Plassein made the acquisitions through a series of leveraged buyouts ("LBO") whereby a group of lenders advanced funds and extended credit to Packaging in exchange for security interests in the Target Companies' assets and promises by the Target Companies to repay the loans. Packaging then used those funds to acquire the stock of the Target Companies and to pay off the Target Companies' existing secured debt. (Compl. ¶¶ 32-34 and 49.) The Target Companies were each privately owned companies (Compl. ¶ 27) and, as such, their stock was not traded in the public securities markets. The Target Companies were not merged into Plassein but changed their names and continued to operate as separate entities.

The LBO transactions proceeded in two phases. In the first phase on January 10, 2000, Packaging closed on acquisitions of the stock of: (a) Plastical Industries, Inc. ("Plastical," n/k/a Plassein International of Spartanburg, Inc.); (b) Nor Baker Industries, Ltd. ("Nor Baker," now in liquidation in Canada); (c) Marshall Plastics Film, Inc. ("Marshall," n/k/a Plassein International of Martin, Inc.); and (d) Key Packaging Industries Corp. ("Key," n/k/a Plassein International of Salem, Inc.). Plassein purchased the assets of Transamerican Plastic LLC ("Transamerican," n/k/a Plassein International of Ontario, Inc.). Following these acquisitions, the Target Companies purchased in the first phase became jointly and severally liable for the entire debt incurred to finance the transactions, and all granted a

---

Plassein Packaging Corporation ("Packaging") which participated in the closings of the acquisitions and whose funds Fleet Bank wired.

security interest in all of their assets to secure that debt.  (Compl. ¶ 33.)

In the second phase, on August 15, 2000, Packaging acquired the stock of Rex International, Inc. ("Rex," n/k/a Plassein International of Thomasville, Inc.).  Following the Rex transaction, Rex became liable not only for the debt incurred in the course of Plassein's acquisition of the Rex stock, but also for the January Acquisitions.  (Compl. ¶ 48.)  Thus, the Target Companies were jointly and severally liable for the entire debt incurred in the acquisitions.

Plassein alleges that the Shareholders received a substantial premium for their shares, which was accounted for on the post-closing balance sheets as "goodwill." (Compl. ¶¶ 45 and 57.)  Plassein further claims that each transaction rendered each acquired company insolvent, in that, the sum of their debts was greater than the value of their assets at fair valuation. (Compl. ¶¶ 46 and 58-61.)

The Complaint contains the details of the transfers from Packaging to the Shareholders as follows:

a.  <u>To the Shareholders of Key</u>:

| | | | |
|---|---|---|---|
| Thomas F. Fay . . . . . . . . . . . . | $2,829,179.34 | Sidney Zeitlin . . . . . . . | $3,571,664.30 |
| Ruth L. Fishback . . . . . . . . . . | $2,706,414.19 | ZFC Associates Inc. . . . . | $140,727.42 |
| Mark R. Freedman . . . . . . . . . . . | $69,403.19 | William G. Russell . . . . . . | $19,141.09 |
| Robert N. Zeitlin  . . . . . . . . . | $2,188,122.12 | Robert N. Zeitlin 1999 Charitable Remainder Unitrust  . . . . | $518,426.87 |
| Total:  . . . . . . . . . . . . . . . . | <u>$12,043,078.52</u> | | |

b.  To the Shareholders of Marshall

| | | | |
|---|---|---|---|
| The Andrew Marshall Forsberg Trust . . . . . . . . . . . . | $1,016,252.90 | Frank John McCarthy . | $1,270,316.12 |
| Ethel Forsberg Revocable Trust . . . . . . . . . . . . . . . . . . . | $2,286,569.02 | Daniel R. Orris . . . . . . . . . | $41,177.17 |
| Janis Rae Forsberg Trust . . . . . . | $484,244.51 | Bernadine Orris . . . . . . . . | $41,177.15 |
| Total: . . . . . . . . . . . . . . . . . . . | $5,098,559.72 | | |

c.    To the Shareholders of Plastical/Transamerican:

Sam Chebeir  . . . . . . . . . .  $2,046,364.39

d.    To the Shareholders of Rex:

| | | | |
|---|---|---|---|
| B.A. Capital Company LP  . . . . . . . . . | $25,491,779.76 | Stephen S. Wilson  . . . . . . | $1,522,317.98 |
| Heller Financial, Inc. . . . . | $2,347,382.00 | G. Kenneth Pope Jr. . . . . . . . | $171,507.67 |
| Charles J. Warr . . . . . . . . . . | $366,477.36 | Kenneth Olenler . . . . . . . . . . | $285,786.68 |
| Paul D. Gage  . . . . . . . . . | $1,522,317.98 | Daniel A. Jones III . . . . . . . . | $171,507.67 |
| Total . . . . . . . . . . . . . . . | $31,934,274.06 | | |

(Compl., ¶ 40, Exhibit B.)

The Trustee's records of the transfers at issue confirm that non-debtor Packaging, and not Plassein or any of Debtors, made the transfers to the Shareholders.  (Compl., Ex. B.)  The records also indicate that Fleet Bank transferred the funds by wire.  (Id.)

Plassein and the Target Companies filed Chapter 11 bankruptcy petitions on May 14, 2003, and Nor Baker commenced an insolvency proceeding in Canada on the same date. Following the conversions of the cases to Chapter 7, William Brandt was appointed trustee

5

of Debtors' estates on February 6, 2004.

## THE PARTIES' POSITIONS

### A.    The Trustee's Claims

The Trustee's case against the Shareholders, at its essence, is that in acquiring the Shareholders' stock in the Target Companies, Plassein and the other Debtors were rendered insolvent and did not receive reasonably equivalent value in the acquisitions. Thus, the Trustee seeks to avoid the transfers to the Shareholders as fraudulent transfers pursuant to the Bankruptcy Code, 11 U.S.C. § 544, and Delaware law, 6 Del. C. §§ 1304 and 1305.

### B.    The Shareholders' Defenses

The Shareholders raise two separate defenses.[3] First, under Delaware law, it is the debtor that must make the transfer to establish a fraudulent conveyance; and Plassein Packaging Corp., who made the transfers, was not a debtor. Second, under the Bankruptcy Code, 11 U.S.C. § 546(e), the transfers are exempt from avoidance because they qualify as settlement payments by a financial institution.

## DECISION

### A.    Legal Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim upon which relief can be granted under FED. R. CIV. P. 12(b)(6), tests the sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d

---

[3] The Shareholders also argue in their Motions to Dismiss that the transfers did not render Debtors insolvent. The issue of insolvency is highly factual and may not be appropriate for decision at this early stage of the case. The Court will not, and need not, decide whether or not the transfers rendered debtors insolvent.

176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the Court accepts as true all allegations in the complaint and all reasonable inferences drawn from it are considered in the light most favorable to the plaintiff.  *Morse v. Lower Merion School District*, 132 F.3d 902, 905 (3d Cir. 1997).  A motion to dismiss should be granted when it is clear that under any possible set of facts alleged in the complaint, the plaintiff would still not be entitled to judgment.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Official Committee of Unsecured Creditors v. Fleet Retail Finance Group* (*In re Hechinger Investment Company of Delaware*), 274 B.R. 71, 80 (D.Del. 2002) (dismissing portions of a complaint for failure to state a claim because the transfers in question were settlement payments and were not fraudulent).

B.   <u>The Transfers to the Defendants are Settlement<br>Payments, Not Subject to Avoidance</u>

The Trustee alleges that the underlying transfers/payments from Packaging to Defendants for their stock were made by wire transfer through Fleet Bank.  The Court finds that the transfers are "settlement payments" within the meaning of section 546(e) of the Bankruptcy Code and therefore, are not subject to avoidance.

Section 544(b) of the Bankruptcy Code authorizes the Trustee to "avoid any transfer of interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law."  11 U.S.C. § 544(b).  Section 546(e), however, provides that, notwithstanding section 544, "the trustee may not avoid a transfer that is a . . . settlement payment, as defined by section 101 or 741 of [the Bankruptcy Code], made by or to a . . .

7

financial institution." 11 U.S.C. § 546(e).

A "settlement payment" is defined under section 741(8) of the Bankruptcy Code to include "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade." 11 U.S.C. § 741(8). Put simply, "a settlement payment is generally the transfer of cash or securities made to complete a securities transaction." *Lowenschuss v. Resorts International, Inc. (In re Resorts International, Inc.)*, 181 F.3d 505, 515 (3d Cir. 1999). The Court of Appeals for the Third Circuit has repeatedly held that this definition is "extremely broad" and encompasses almost all securities transactions. *In re Resorts International*, 181 F.3d at 515 (quoting *Bevill, Bresler & Schulman Asset Management Corporation v. Spencer Savings & Loan Association*, 878 F.2d 742, 751 (3d Cir. 1989)). In *Resorts*, the Court of Appeals held that payment to a shareholder for his shares as part of a leveraged buyout was "obviously a common securities transaction" and, therefore, a settlement payment under section 546(e). *In re Resorts International*, 181 F.3d at 516; *see also Hechinger*, 274 B.R. at 87 (applying *Resorts* and holding that payment for shares of stock was an unavoidable settlement payment).

The second prong of section 546(e) requires that payment for the securities must be made by or to a financial institution. "So long as a financial institution is involved, the payment is an unavoidable 'settlement payment.'" *Hechinger*, 274 B.R. at 87. The term "financial institution" is defined under the Bankruptcy Code as "a Federal Reserve bank or

an entity that is a commercial or savings bank . . . when any such Federal Reserve bank . . . or entity is acting as agent or custodian for a customer . . . in connection with a securities contract." 11 U.S.C. § 101(22)(A).  This requirement is satisfied when a leveraged buyout payment is made by wire transfer.  *In re Resorts International*, 181 F.3d. at 515.  Indeed, federal regulations require that a wire transfer *must* be performed by a bank; thus, a wire transfer must be made through a financial institution.  *See In re Loranger Mfg. Corp.*, 324 B.R. 575 (Bankr.W.D.Pa. 2005) (taking judicial notice of federal regulation requiring that a wire transfer must be accomplished by a bank, rejecting plaintiff's arguments that bank's involvement was "mere facilitation"and holding that debtor's leveraged buyout of defendant's shares was a "settlement payment" under § 546(e) because payment was made by wire transfer).

The transactions between Defendants and Packaging are indistinguishable from the stock purchases held to be unavoidable settlement payments in *Resorts*.  In *Resorts*, Resorts' shares were purchased by Griffco Acquisition Corporation in an LBO.  Resorts erroneously authorized a wire transfer to be paid to a shareholder through Chase Manhattan Bank. Resorts later filed for Chapter 11 bankruptcy protection, and the Trustee sought to recover the funds as an avoidable transfer.  The shareholder argued that the wire transfer was a "settlement payment" and therefore unavoidable under § 546(e).  The Court of Appeals looked to the plain language of the statute and held that the payment for the shares was a settlement payment for the purposes of section 546(e), and therefore not avoidable.  *In re*

*Resorts International*, 181 F.3d at 515-516.

Here, there is no dispute that the payments to the Shareholders were made by Fleet Bank, a financial institution, to other financial institutions in order to settle securities transactions, namely, Packaging's purchase of stock of the Target Companies. *Resorts* dispels any doubt that the transfers to the Shareholders were settlement payments. In the securitites industry, a settlement payment is generally the transfer of cash or securities made to complete a securities transaction. *Id.* at 515. Accordingly, section 546(e) applies to the transactions at issue and the wire transfers executed by Fleet Bank are unavoidable.

However, the Trustee endeavors to limit the application of *Resorts* to publicly traded securities. The Trustee argues that Section 546(e) was enacted for protecting the operation of the security industry's clearance and settlement system which operates only with respect to securities that are publicly traded. The Trustee thus argues that section 546(e) applies only to publicly traded securities. The Trustee relies on two cases in support of his argument, *Zahn v. Yucaipa Capital Fund*, 218 B.R. 656 (D.R.I. 1998) and *Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655 (N.D. Ill. 1991). *Zahn* and *Wieboldt Stores* both held that LBO payments were not covered by section 546(e) because "'the system of intermediaries and guarantees' that normal securities transactions involve is not in play in an LBO." *In re Resorts International*, 181 F.3d at 515 (citing *Zahn*, 218 B.R. at 676).

The Trustee's argument, however, was expressly rejected by *Resorts*. "Although no clearing agency was involved in this transfer, two financial institutions - Merrill Lynch and

Chase - were.  Under a literal reading of section 546(e), therefore, this was a settlement payment 'made by . . . a financial institution.'"  *In re Resorts International* 181 F.3d at 515 (quoting 11 U.S.C. § 546(e)).  The *Resorts* Court considered and rejected *Zahn* and *Weibloldt Stores*, holding that the plain language of the statute trumped extraneous considerations, and concluding that "the term 'settlement payment' is a broad one that includes almost all securities transactions."  *In re Resorts International*, 181 F.3d at 515-516.

Furthermore, the Trustee does not point the Court to any Third Circuit decision that limits application of *Resorts* to public companies.  However, the *Resorts* Court relied on *In re Kaiser Steel Corporation*, 952 F.2d 1230 (10th Cir. 1991), that held that the term "settlement payment" applied to a repurchase agreement, which was found not to be "a 'trade' entered into on an exchange."  *Kaiser Steel*, 952 F.2d at 1239.  The Court in *Resorts* acknowledged that commentators were critical of *Kaiser Steel* for applying section 546 to a transaction involving an LBO because it did not involve the public trading system and thus did not reflect Congressional intent.  *In re Resorts International*, 181 F.3d at 516,  n.10.  However, the Court of Appeals held firm that the plain language of the statute mandated the "logical conclusion" that the section 546(e) exemption extends to all securities transactions, whether the securities at issue are publicly traded or are securities traded outside the public trading system.  *Id.*

More recent case law within the Third Circuit follows the *Resorts* analysis.  *See In re Loranger Mfg. Corp.*, 324 B.R. 575, 584-85 (Bankr.W.D.Pa. 2005) (holding that $9 million

11

payment to defendant in a leveraged buyout for shares that were not publicly traded was unavoidable under section 546(e)); *Official Committee of Unsecured Creditors of The IT Group v. Acres of Diamonds, L.P.*, (*In re The IT Group, Inc.*), 2006 WL 3833933 (Bankr. D.Del. 2006).  In *The IT Group*, the post-confirmation trust sued to avoid and recover a fraudulent conveyance in the amount of $575,000 for the purchase of stock in a privately held company.  In granting summary judgment and finding the transaction was not avoidable, the Court unequivocally held that "the term settlement payment is to be applied broadly to any transfer of stock or cash to pay for stock."  *Id*. at *4.  Chief Judge Walrath applied the settlement payment exemption to privately held securities even though the transaction did not involve a true financial intermediary or securities clearing agency, finding that:

> Although this case does not involve a leveraged buyout, publicly traded stock, or a clearing agency, the Third Circuit's holding in *Resorts* mandates a conclusion that section 546(e) is broad enough to protect from avoidance a "settlement payment . . . made by . . . [a] financial institution."

*Id.* (citations omitted).

It is therefore certain that Defendants have met all of the requirements for the section 546(e) safe harbor from fraudulent transfer liability.  The broad application of what constitutes a settlement payment mandated in *Resorts* covers even transactions which, as here, are LBO purchases of non-public securities.  *Id.*

### C.    The Complaint Fails to State a Claim for Fraudulent Conveyance

The Trustee's claims against Defendants are also based upon sections 1304 and 1305

of the Delaware Code, which are applicable to this proceeding pursuant to section 544 of the

Bankruptcy Code.

Section 1304 of the Delaware Code provides in relevant part,

> (A)    A transfer made or obligation incurred by a debtor is
> fraudulent as to a creditor, whether the creditor's claim arose
> before or after the transfer was made or the obligation was
> incurred, if the debtor made the transfer or incurred the
> obligation:
>
> ***
>
> (2)    Without receiving a reasonably equivalent value in
> exchange for the transfer or obligation, and the debtor:
>
>> a.    Was engaged or was about to engage in a
>> business or a transaction for which the
>> remaining assets of the debtor were
>> unreasonably small in relation to the
>> business or transaction; or
>>
>> b.    Intended to incur, or believed or
>> reasonably should have believed that the
>> debtor would incur, debts beyond the
>> debtor's ability to pay as they became due.

6 Del.C. § 1304.  Section 1305 of the Delaware Code provides in relevant part,

> (a)    A transfer made or obligation incurred by a debtor is
> fraudulent as to a creditor whose claim arose before the transfer
> was made or the obligation was incurred if the debtor made the
> transfer or incurred the obligation without receiving a
> reasonably equivalent value in exchange for the transfer or
> obligation and the debtor was insolvent at that time or the debtor
> became insolvent as a result of the transfer or obligation.

6 Del.C. § 1305.  Thus, in order to state a claim under section 1304 and 1305, the Trustee

must allege that (i) the debtor made a transfer (ii) for less than reasonably equivalent value

13

and (iii) the debtor was, or was rendered, insolvent thereby.

The Complaint fails to state a claim for avoidance of a fraudulent conveyance because the Trustee does not allege that either Plassein or any other Debtor made any transfers to the Shareholders.  Instead the Trustee asserts that Packaging, a non-debtor, through Fleet Bank, paid for the shares of the Target Companies.  Since no Debtor made a transfer, there is no legal basis for any fraudulent conveyance claim.

The Trustee seeks to avoid the implications that Packaging is not a debtor by arguing that the transactions are a single integrated plan and there is authority to "collapse" the transaction to determine fraudulent conveyance liability.  *See, e.g., Hechinger*, 274 B.R. at 91.

The Court agrees with Defendants that the allegations contained within the Complaint do not serve as a basis for collapsing the transactions.  Absent proof of intent to defraud, independent transactions will not be collapsed.  *Compare, e.g., U.S. v. Gleneagles Investment Co., Inc.*, 565 F.Supp. 556 (M.D. Pa. 1983); 571 F.Supp. 935 (M.D. Pa. 1983); 584 F.Supp. 671 (M.D. Pa. 1984); aff'd sub nom, *U.S. v. Tabor Court Realty Corporation*, 803 F.2d 1288 (3d Cir. 1986) (sustaining collapse of various transactions where parties acted in bad faith); *Voest-Alpine Trading USA Corporation v. Vantage Steel Corp.*, 919 F.2d 206 (3d Cir. 1990) (upholding finding that several transactions at the same time were a single integrated transaction that functioned as a subterfuge and damaged unsecured creditors).

The Complaint does not allege fraud or bad faith, and at oral argument, the Trustee

conceded he is not claiming actual fraud. The Complaint also does not allege any relationship whatsoever among the transactions or the Shareholders. Moreover, there are no allegations calling into question the good faith of the Shareholders.

## CONCLUSION

The *Resorts* decision stands firmly between the Trustee and the successful prosecution of the alleged fraudulent conveyance claims. The Trustee concedes that *Resorts* controls the outcome of the pending motion to dismiss. *Resorts*, in turn, has been extended in cases such as *Loranger* and *The IT Group*. All of these cases clearly establish that the transfers at issue are exempt from avoidance under section 544 of the Bankruptcy Code. Therefore, the Court will **GRANT** the Motions to Dismiss.

An appropriate Order follows.

Dated: April 20, 2007

Kevin Gross
United States Bankruptcy Judge